# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38557

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

FILIP DANNEY,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

Boise, December 2011 Term

2012 Opinion No. 34

Filed: March 1, 2012

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. The Honorable Michael R. McLaughlin, District Judge.

The judgment of the district court is affirmed.

The Cox Law Firm, PLLC, Boise, for appellant.  Sean Beaver argued.

The Honorable Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.  Mark Olson argued.

_____

TROUT, Justice Pro Tem.

This appeal comes before this Court on a Petition for Review from a decision of the Court of Appeals.  Filip Danney appeals from the district court's denial of his motion to suppress evidence of drugs obtained through the use of a drug dog during a traffic stop.  On appeal, Danney argues that the district court erred in determining that: (1) a proper foundation was laid for the admission of Global Positioning System (GPS) data used in his prosecution; (2) reasonable suspicion existed to justify the warrantless extension of his traffic stop; and (3) the government's placement of a GPS device constituted an impermissible warrantless search.  Because we agree that the officer had a reasonable articulable suspicion of possible criminal activity justifying the limited detention of Danney for purposes of a drug dog search, we affirm the district court's decision.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

At the suppression hearing, Ada County Detective Matt Taddicken testified that in March, 2007, based upon an anonymous tip he had received, he was investigating Danney's possible connection to a marijuana trafficking ring. Following up on this information, Taddicken went to Danney's house and searched his discarded trash on several occasions. He eventually discovered items bearing the name "Filip Vogelpohl" (Danney's alias), a tissue or paper towel bearing marijuana residue,[1] a heat-sealed bag, and several sections that appeared to be cut from similar bags. On approximately May 16, 2007, Taddicken testified that he located a truck registered to Danney parked outside Danney's business, Boise Art Glass, and attached a GPS tracking device to the vehicle's underside. The GPS allowed Taddicken to monitor the location of the truck via an online program, and on May 21, 2007, he noticed that Danney's vehicle was in and around Arcata, Humboldt County, California. Taddicken testified at the suppression hearing that, based on his prior training and experience, Arcata is a known source city for Boise area marijuana. The next day, Taddicken noticed that Danney's vehicle was travelling back toward Boise. He contacted Ada County Deputy Matthew Clifford when Danney's vehicle was entering Boise and told Clifford that the vehicle may be carrying drugs. At that time, Clifford was on patrol and had with him his drug detection dog, Shad.

Upon observing Danney fail to signal for five seconds before changing lanes on two occasions, Clifford initiated a traffic stop and called for a backup officer. Clifford identified Danney and asked where he was coming from, to which Danney responded that he was coming from a sandwich shop and was on a "lunch break."[2] After obtaining Danney's documentation, Clifford returned to his patrol car and called Taddicken to discuss Taddicken's suspicions of drug activity. Approximately six minutes into the stop, the backup officer arrived and Clifford deployed his drug dog to sniff the vehicle. The dog alerted, and a subsequent search of Danney's vehicle revealed marijuana.

Danney was charged with felony trafficking in marijuana under Idaho Code § 37-2732B(a)(1). He filed a motion to suppress "any evidence obtained by the State through the

---

[1] At the suppression hearing, Taddicken described this as a "green, leafy residue," which he "field-tested" and determined to be marijuana.

[2] Clifford also observed Danney to be nervous and "fidgety" to a degree that was "not normal behavior for a citizen on a traffic stop."

search of the Defendant's vehicle during an alleged traffic stop on May 22, 2007, along with any evidence obtained by the State as a result of the information obtained in that illegal search," on the basis that the warrantless extension of the stop was not justified by a reasonable suspicion of criminal activity. At the suppression hearing, Danney objected repeatedly to Taddicken's testimony about information he received from the GPS device, arguing that the State did not lay a proper foundation. The district court admitted the GPS evidence and denied the motion to suppress, concluding that "Officer Clifford and Detective Taddicken had a collective knowledge of articulable facts supporting a reasonable suspicion that the defendant was involved in trafficking marijuana." Danney then entered a conditional guilty plea, preserving his right to appeal the denial of his suppression motion. Danney timely appealed, and the case was assigned to the Idaho Court of Appeals, which affirmed the district court's denial of the motion to suppress. This Court granted Danney's Petition for Review.

## II.
## ISSUES ON REVIEW

On appeal, Danney raised a number of issues which can be distilled to three specific challenges: (1) whether there was a proper foundation for the GPS data; (2) whether the officers had a reasonable articulable suspicion of criminal activity; and (3) whether the placement of the GPS device constituted a warrantless search. For the reasons which follow, we determine that the only issue which needs to be addressed is the second issue raised.

## III.
## STANDARD OF REVIEW

When reviewing a Court of Appeals decision, this Court directly reviews the decision of the lower court but gives serious consideration to the views of the Court of Appeals. *State v. Hansen*, 151 Idaho 342, 345, 256 P.3d 750, 753 (2011). In reviewing an order denying a motion to suppress evidence, this Court applies a bifurcated standard of review. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). This Court will accept the trial court's findings of fact unless they are clearly erroneous but will freely review the trial court's application of constitutional principles to the facts found. *Id.* Findings of fact are not clearly erroneous if they are supported by substantial and competent evidence. *State v. Bishop,* 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009).

3

## III.

## ANALYSIS

On appeal, Danney does not argue with the basis for the officer's initial traffic stop and concedes that, based upon the traffic law violation, the stop was valid. Instead, Danney asserts that there was no basis for the officer to then unreasonably delay the traffic detention while he waited for backup and then conducted the drug dog search.

### A. Placement of GPS device

Danney asserts on appeal that the officer's placement of a GPS tracking device on his automobile without a warrant constituted a violation of his reasonable expectation of privacy and was an unreasonable warrantless search. We need not reach this issue because it was not preserved for review on appeal. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge,* 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). While Danney objected repeatedly at the suppression hearing to a lack of foundation for admission of the GPS data, he did not at any time object that the placement of the GPS device itself constituted a search in violation of the Fourth Amendment. Thus we decline to address this issue on appeal.

### B. GPS information

On appeal, Danney points to a number of alleged foundational deficiencies in Taddicken's testimony regarding the GPS technology used to monitor his vehicle, arguing that the district court abused its discretion in admitting the evidence the GPS device produced. Specifically, Danney asserts that Taddicken failed to demonstrate: (1) the scientific principles behind the GPS technology, such as its rate of error, method of calibration, and accuracy over long distances; (2) that the particular GPS device used in this case was functioning properly; (3) that Taddicken followed proper police protocols in using the device; and (4) that the GPS device produced accurate and reliable data.

The problem with Danney's argument is that the State was not seeking to admit the actual GPS data obtained as a result of the use of the GPS monitoring device for the purposes of establishing a fact in issue. *See* I.R.E. 702 (regulating only the admission of scientific evidence submitted to help "determine a fact in issue"). Danney compares the admission of the GPS data with other cases in which the courts have grappled with the admission of data relating to laser detection speed devices, *State v. Williamson*, 144 Idaho 597, 166 P.3d 387 (Ct. App. 2007), or

4

evidence obtained through a polygraph, *State v. Perry*, 139 Idaho 520, 81 P.3d 1230 (2003). Those cases are not on point. In those instances, the scientific data was part of the proof necessary to establish a fact in issue, the commission of a crime, and thus, the question arose as to whether there was a sufficient foundation laid for its admissibility. Here, whether Danney's vehicle went to Arcata, California, is not a necessary element of the crime; rather, it is simply part of the information on which Taddicken based his suspicion of criminal activity. Indeed, it is not necessary that police officers rely only on evidence which will be admissible in court in finding a reasonable suspicion of criminal activity. *See, e.g., State v. Bishop,* 146 Idaho 804, 813–14, 203 P.3d 1203, 1212–13 (2009) (discussing a number of cases in which a reasonable suspicion was based upon "hearsay upon hearsay," which clearly would not have been admissible in court). The question is whether the information is such that a reasonable officer would rely on it in forming that suspicion, not whether the State will ultimately be successful in having all of that information admitted in court. *See State v. Gallegos*, 120 Idaho 894, 896–97, 821 P.2d 949, 951–52 (1991).

Taddicken testified that he had been through training with the GPS device, that he was familiar with its operation, and that he had successfully tested the accuracy of the GPS device in question. The detective testified that the device communicates with orbiting satellites and uses the information they transmit "to figure a location." Detective Taddicken testified as to the brand and model of the particular device and said that he had used this model previously in testing. He indicated that his department's testing of this and similar GPS devices produced "successful" and "reliable" results. He explained that before placing the GPS transmitter on Danney's vehicle, he had tested the device by putting it on his own vehicle and comparing his actual location to the location reported by the device as he drove around Boise. In this testing, the GPS's Internet transmissions were monitored either by Taddicken using a laptop computer in his patrol car with wireless Internet access, or by another officer on a computer at a remote location, and the device proved accurate.

While this Court has never addressed the question of the admissibility of data obtained through the use of a GPS device, as indicated previously, that is not an issue which must be addressed here. The question is simply whether it was reasonable, under these circumstances, for Taddicken to rely on information provided by the tracking device in assessing whether there might be some criminal activity taking place. In light of his training and experience with the device, it was not unreasonable for him to rely on the location data, irrespective of whether the State might

5

ultimately be successful in getting that data admitted into evidence.

### C. Reasonable suspicion of criminal activity

Danney also takes issue with the district court's finding that the officers involved had a "collective knowledge of articulable facts supporting a reasonable suspicion that the defendant was involved in trafficking marijuana." On review, Danney primarily takes issue with the weight the district court gave to each of these individual items of evidence, arguing that: (1) the tip regarding Danney is of little significance because it was anonymous and, thus, unreliable; (2) the trash evidence did little to corroborate that tip, and the district court heard no testimony linking the heat-sealed bag material to marijuana trafficking; (3) the GPS data was not probative because it was not shown that Danney was the one driving the vehicle, the testimony that Arcata was a source city for marijuana was vague, and there were innocent explanations for Danney's presence there; and (4) the district court made no finding of fact regarding Danney's excessive nervousness during the stop. The State asserts that although none of these items, standing alone, supports reasonable suspicion, their sum certainly does.

Because a traffic stop is limited in scope and duration, it is analogous to an investigative detention and is analyzed under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *See State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *State v. Ramirez,* 145 Idaho 886, 889, 187 P.3d 1261, 1264 (Ct. App. 2008). An investigative detention "must be temporary and last no longer than necessary to effectuate the purpose of the stop." *State v. Henage*, 143 Idaho 655, 658, 152 P.3d 16, 19 (2007) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Accordingly, where officers abandon the initial purpose of a routine traffic stop and extend it to allow for a drug dog search, the extension must be justified by a reasonable suspicion that criminal activity is afoot. *Gallegos*, 120 Idaho at 896, 821 P.2d at 951 (citing *Terry*, 392 U.S. 1); *State v. Wigginton*, 142 Idaho 180, 184, 125 P.3d 536, 540 (Ct. App. 2005); *State v. Aguirre*, 141 Idaho 560, 563–64, 112 P.3d 848, 851–52 (Ct. App. 2005). This standard is less demanding than the probable cause standard. *Gallegos*, 120 Idaho at 896, 821 P.2d at 951 (citing *Sokolow*, 490 U.S. 1, 7 (1989)). A reasonable suspicion exists when the officer—or officers—can articulate specific facts which, together with rational inferences from those facts, reasonably justify a suspicion that criminal activity is occurring. *Id.* at 896–97, 821 P.2d at 951–52. Further, an officer may take into account his experience and law enforcement training in drawing inferences from facts gathered. *State v. Swindle*, 148 Idaho 61, 64, 218 P.3d 790, 793 (Ct. App. 2009). Finally, the reasonableness

of the suspicion must be evaluated based on the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999).

As an initial matter, several of the errors Danney asserts go to the findings of fact relied on by the district court rather than application of the law. On review of a suppression motion ruling, this Court will accept the district court's findings unless they are clearly erroneous. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). First, Danney argues that the district court heard no testimony linking the heat-sealed bag material found in his trash to marijuana trafficking. However, although not explicitly articulated, Taddicken indeed provided that link in his testimony. In response to the question of whether there was anything found in the trash besides the marijuana residue "that would give you some rise [sic] to believe that [Danney] was trafficking in marijuana," Taddicken answered, "the bags." Although this link could have been clearer, it was sufficient enough that the district court's finding that "the other evidence found [in the trash] was consistent with drug trafficking and not just personal use" did not constitute clear error.

Further, although Danney asserts that Arcata, California, has not been sufficiently shown to be a source city for Boise marijuana, this is also a finding of fact within the province of the district court. *See Purdum*, 147 Idaho at 207, 207 P.3d at 183. Because it was based on substantial testimony given by Taddicken, it has not been shown to be clearly erroneous.[3] In addition, although Danney asserts that it was never shown that he was driving the vehicle in question when it was tracked to Arcata, this too is a finding of fact that is not clearly erroneous. Besides the fact that the vehicle was registered to Danney and was seen parked at his place of business, he was found driving the vehicle soon after the GPS indicated his vehicle had returned to Boise.

Danney also argues that his alleged "nervousness" should not be considered in determining whether the officer had a reasonable articulable suspicion of criminal activity. On that issue the district court stated:

> The State argues the suspicion of the defendant's marijuana involvement was even stronger because the defendant was nervous when Officer Clifford pulled him over and because the defendant lied about where he had been that day. However, *without taking into account the defendant's demeanor or honesty during the traffic stop*, the information gathered prior to the traffic stop was

---

[3] The State points to substantial testimony by Taddicken to support this finding. Taddicken testified that his assertions about Arcata and Humboldt County were informed by training and prior investigations, conversations with informants who had gone to the area to pick up marijuana, law enforcement "community knowledge," and information shared by members of law enforcement agencies in the Arcata area.

7

sufficient to support a reasonable suspicion of the defendant's trafficking in marijuana.

(emphasis added). For purposes of this appeal, this Court will assume no finding was made about Danney's nervousness or whether he told the truth about his whereabouts prior to the stop, and will not consider them as part of the "reasonable suspicion" analysis.

As for Danney's arguments about the law applied to the facts as found, the State correctly points out that although each individual finding is less than conclusive, the totality of the circumstances support a reasonable suspicion of criminal activity justifying the stop. The standard of "reasonable articulable suspicion" is not a particularly high or onerous standard to meet. The officer must simply be acting on more than a "mere hunch or 'inchoate and unparticularized suspicion.'" *Bishop,* 146 Idaho at 811, 203 P.3d at 1210 (citations omitted). As to the anonymous tip, while an uncorroborated, anonymous tip is generally not enough to justify an investigative stop, "it may contribute to an accumulation of evidence that warrants reasonable suspicion." *State v. Hankey*, 134 Idaho 844, 847–48, 11 P.3d 40, 43–44 (2000) (holding that the anonymous tip at issue, while insufficient to create reasonable suspicion on its own, was entitled to "some weight" when considered together with other facts known to the officer). Further, as the district court noted, the tip was later corroborated to some extent when Taddicken found marijuana residue and heat-sealed bags in Danney's trash, as well as when Danney's vehicle travelled to a known source city for Boise marijuana.

The same is true for the evidence found in Danney's trash. Indeed, marijuana residue is clear evidence of illegal activity, whether indicating personal use or otherwise. *See* I.C. §§ 18-1502C, 37-2732. Moreover, the discovery of such evidence following an anonymous tip indicating trafficking activity certainly creates an articulable fact reasonably raising suspicion that Danney was involved in such activity. The same can also be said for the heat-sealed bag material, particularly when coupled with Taddicken's experience- and training-based knowledge of the tools of the drug trade and the inferences drawn therefrom. *See Swindle*, 148 Idaho at 64, 218 P.3d at 793.

As for the GPS data, it too constitutes an articulable fact supporting a reasonable suspicion when coupled with the surrounding circumstances discussed above. Although Danney asserts that there could be innocent explanations for his vehicle's presence in that area, the existence of alternative innocent explanations does not necessarily negate reasonable suspicion. *State v. Rader*,

8

135 Idaho 273, 275–76, 16 P.3d 949, 951–52 (Ct. App. 2000); *U.S. v. Arvizu*, 534 U.S. 266, 273–76 (2002). Indeed, here, it was highly reasonable for Taddicken to infer that the trip's purpose was to pick up drugs because of his knowledge of the tip, the evidence found in Danney's trash, and the known drug activity in the Arcata area.

In sum, the anonymous tip (corroborated by the evidence found in Danney's trash and his trip to Arcata); the marijuana residue and heat-sealed bags (evidencing more than personal drug use when coupled with the tip and Danney's Arcata trip); and the GPS data (evidencing trafficking activity when coupled with the tip, the trash evidence, and Taddicken's knowledge of Arcata) all constitute articulable facts that, when taken together with the officers' experience- and training-based inferences, reasonably supported a suspicion of criminal activity.

## IV.
## CONCLUSION

The district court correctly analyzed the information on which the officers relied and correctly determined that there was a reasonable articulable suspicion of criminal activity justifying the limited seizure for the purpose of bringing in a drug dog. We affirm the district court's denial of Danney's motion to suppress.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.