IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 40530

| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 754 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 19, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JONATHAN ROSS MATHEWS, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. G. Richard Bevan, District Judge.

Order denying motion to suppress evidence, affirmed.

Sara B. Thomas, State Appellate Public Defender; Shawn F. Wilkerson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Jonathan Ross Mathews appeals from his judgment of conviction for trafficking in marijuana, felony, Idaho Code § 37-2732B(a)(1)(B), (D). He argues that the district court erred by denying his motion to suppress evidence found in his automobile. He contends that the police lacked reasonable suspicion to extend a traffic stop in order to provide time for a drug dog to arrive on scene. We affirm.

## I.

## BACKGROUND

The following description of the events is derived from evidence presented at the hearing on Mathews' suppression motion. Officer Aaron Bingham observed Mathews travelling 66 mph in a 60-mph zone on Highway 93. Bingham activated his lights and siren and stopped Mathews at approximately 1:27 p.m. During the stop, Bingham looked for indicia of drug trafficking and asked questions in order to determine whether Mathews was a drug trafficker. He testified that

1

he had learned to look for particular indicia of drug trafficking during two trainings, a week-long training in 2006 or 2007 covering drug interdiction and anti-terrorism, and a later, one-day training covering regional drug interdiction efforts. During one of these sessions, Bingham was trained to look for suspicious travel plans in which a person avoids a known drug interdiction zone. Bingham also learned Interstate 80 between Nevada and Salt Lake City was an "extremely successful drug interdiction" zone.

Bingham first asked Mathews to provide his license, registration, and proof of insurance. The insurance card that Mathews first provided to the officer had expired, and Mathews spent several minutes searching for current proof of insurance. Bingham then inquired whether there were any controlled substances in the car. In response, Mathews took off his sunglasses, made eye contact with the officer, told the officer there were no controlled substances in the car, turned back to a forward-looking position, and put the sunglasses back on his face. The officer later testified that the glasses maneuver was "the strangest thing that's ever occurred to me on a traffic stop," that it "was a huge change of behavior," and seemed "planned or staged or practiced."

The officer also asked Mathews where he was going. Mathews stated that he was travelling from Reno, Nevada to Cheyenne, Wyoming. Bingham knew the direct route between those two locations is Interstate 80, and the location where Mathews was stopped on Highway 93 was far north of Interstate 80. Mathews did not explain why he was taking a diversion of over one hundred miles but did indicate his route would reconnect with Interstate 80 before he reached Cheyenne. Bingham found this route suspicious because Mathews did not offer any explanation for his diversion and because he believed that Mathews may have been avoiding a known drug interdiction zone.

Additionally, Bingham asked where Mathews had stayed and gambled in Reno. Mathews indicated that he had travelled from Kansas to Reno, stayed at a Shiloh Inn in Reno, and gambled at a gas station and one other place, though he could not recall the name of that other place. Bingham suspected Mathews was being untruthful. He doubted that Mathews would travel to Reno to gamble at a gas station because there were many gas station gambling establishments between Kansas and Reno, including establishments in Nevada.

During the conversation, Bingham observed food wrappers, four energy drink containers, and a hardcopy atlas in the car. These items indicated to the officer that Mathews was on a long trip and did not want to fall asleep. In his experience, drug traffickers often travel long distances

and try to do so with limited sleeping breaks. He also testified that drug traffickers often use paper maps instead of a GPS because if they happen to be arrested, a GPS could reveal their end destination, which drug traffickers do not wish to disclose to police. While Bingham conceded that "the items alone don't mean a lot" he stated that he was "specifically" told in all of his pertinent training courses that he should look for food wrappers, energy-type drinks, and paper maps.

After his discussion with Mathews, at approximately 1:30 p.m., Bingham returned to his car and requested a canine officer. The officer and dog arrived on scene at 1:44 p.m., and the dog alerted to the presence of drugs at 1:48 p.m. Officers found over twenty-four pounds of marijuana in the trunk of Mathews' vehicle.

Mathews was charged with trafficking in marijuana, I.C. § 37-2732B(a)(1)(B), (D). He filed a suppression motion, asserting that Bingham impermissibly extended the duration of the traffic stop to await the drug dog. The trial court denied the motion. Mathews thereafter entered a conditional guilty plea, preserving the right to appeal the denial of his suppression motion. Mathews appeals from the judgment of conviction.

## II.

## ANALYSIS

Mathews contends that Officer Bingham extended the traffic stop for drug investigation purposes without having any information that would give rise to reasonable suspicion that Mathews was engaged in drug activity. In particular, he argues that in denying Mathews' suppression motion, the trial court placed undue emphasis on factors that are not suspicious and inadequately considered facts that would reduce any possible suspicion.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

3

The Fourth Amendment to the United States Constitution guarantees every citizen the right to be free from unreasonable searches and seizures. *State v. Salois*, 144 Idaho 344, 347, 160 P.3d 1279, 1282 (Ct. App. 2007); *State v. Cerino*, 141 Idaho 736, 737, 117 P.3d 876, 877 (Ct. App. 2005). Because a traffic stop is limited in scope and duration, it is analogous to an investigative detention and is analyzed under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Stewart*, 145 Idaho 641, 644, 181 P.3d 1249, 1252 (Ct. App. 2008). An investigative detention is permissible if it is based upon specific articulable facts that justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931.

Although the investigation following a stop generally must be reasonably related in scope to the circumstances that justified the interference in the first place, *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305, a routine traffic stop also may turn up suspicious circumstances that could justify an officer asking further questions unrelated to the stop. *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990). The officer's observations, general inquiries, and events succeeding the stop may--and often do--give rise to legitimate reasons for particularized lines of inquiry and further investigation. *Id*. Accordingly, the length and scope of an investigatory detention may be lawfully expanded if there exist objective and specific articulable facts that justify suspicion of criminal activity in addition to that which prompted the detention. *Id*.

A drug dog sniff may be performed during a traffic stop without violating the Fourth Amendment if the duration of the stop is not extended or if any extension of the stop is justified by reasonable suspicion. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) ("the use of a well-trained narcotics-detection dog . . . during a lawful traffic stop . . . does not rise to the level of a

4

constitutionally cognizable infringement"); *State v. Ramirez*, 145 Idaho 886, 890, 187 P.3d 1261, 1265 (Ct. App. 2008) (stop was not extended to allow a drug dog sniff); *State v. Brumfield*, 136 Idaho 913, 917, 42 P.3d 706, 710 (Ct. App. 2001) (extending the stop to allow for a drug dog sniff was justified).

When gauging whether information known to an officer justified reasonable suspicion, we consider the totality of the circumstances rather than viewing individual facts in isolation. *Roe*, 140 Idaho at 180, 90 P.3d at 930. Even where any individual factor "is not by itself proof of any illegal conduct and is quite consistent with innocent" conduct, a court may nonetheless conclude that the factors amount to reasonable suspicion when taken together. *United States v. Sokolow*, 490 U.S. 1, 9 (1989). That is, the whole may be greater than the sum of its parts because the officer may consider the import of one fact in light of another fact.

Mathews argues that the court erred by considering certain items in the car to be suspicious. As to the energy drinks and the food wrappers, the officer conceded that these items were minimally relevant. The trial court considered the food wrappers and energy drinks in light of Bingham's other observations as well as his training and expertise. We need not decide whether those items could ever contribute to reasonable suspicion of drug transport when the driver has stated that he is on a long trip because in this case, the other facts observed by Bingham created reasonable suspicion and justified the extension of the stop.

We conclude that Mathews' marked change in behavior when asked if he possessed a controlled substance, along with his strange, unexplained travel route and his odd description of his activity in Nevada gave rise to reasonable suspicion. Although Mathews accurately describes his response to the question about drugs as calm and without any display of nervousness, the behavior was strange. Its strangeness indicated potential dishonesty in response to a question asking about controlled substances. Mathews contends that we cannot logically hold that his calm response to the officer is suspicious because we have previously held that nervous responses can be suspicious. Mathews' argument misses the mark. Neither the district court nor we view Mathews' response to the officer's question about drug possession as suspicious because it was calm but because it was accompanied by the odd behavior of first removing his sunglasses and looking directly at the officer while answering the question, and then putting the sunglasses on again, as if it were a staged performance. Marked changes in demeanor when questioned about possible criminality can indicate dishonesty and contribute to reasonable

5

suspicion. This holding is entirely consistent with our prior decisions. For example, in *State v. Grantham*, 146 Idaho 490, 497, 198 P.3d 128, 135 (Ct. App. 2008), we held that a change in demeanor in response to a specific question from an officer contributed to reasonable suspicion.

When considered in light of this unusual conduct in response to a question about drug possession, Mathews' route of travel was also suspicious. While there are numerous innocent explanations for taking a circuitous route, Mathews' answers to the officer's queries neither gave an explanation nor even acknowledged that his location was far off his proclaimed course. This led the officer to suspect that the actual explanation might be that Mathews was avoiding a portion of Interstate 80 because it was known to be a drug interdiction zone. Mathews' indirect, unexplained travel route, although not suspicious in isolation, was suspicious when combined with his odd behavior in response to the officer's question about drugs.

Mathews argues that it is inconsistent to hold both that travelling on a road known to be frequented by drug traffickers contributes to suspicion, as we have in other cases, *e.g.*, *State v. Danney*, 153 Idaho 405, 411, 283 P.3d 722, 728 (2012) (holding that travel to a known drug source locale contributes to reasonable, articulable suspicion); *State v. McAfee*, 116 Idaho 1007, 1010, 783 P.2d 874, 877 (Ct. App. 1989) (stating that presence in a high-crime area may contribute to reasonable, articulable suspicion), and that avoiding those roads can be suspicious. His argument fails because it ignores context. Certain behaviors, *in the context of accompanying circumstances*, give rise to suspicion. This is neither novel nor troubling. For example, in various contexts, federal circuit courts have held that both having a large amount of luggage and having a small amount of luggage can give rise to suspicion. *See United States v. Lyons*, 486 F.3d 367, 372 (8th Cir. 2007) (holding that the defendant having a large amount of luggage, when the defendant stated he was going on a short trip, was suspicious); *United States v. Ledesma*, 447 F.3d 1307, 1319 (10th Cir. 2006) (holding that having a small amount of luggage, when the defendant said he was going on a long trip, was suspicious). These cases are not contradictory, nor do they create a "patently unreasonable" rule. Rather, they are consistent: observations that appear inconsistent with an individual's story indicate that the story may be untrue.

Mathews' explanation of his travel to Reno was also odd. There may be numerous innocent reasons one might travel all the way from Kansas to Reno to gamble at a gas station or forget the name of another establishment where one gambled, but Mathews' forgetting where he

gambled could indicate that he was being evasive, as could the somewhat strange story about gambling at a gas station. Another factor that the trial court held contributed to reasonable suspicion was Mathews' use of paper maps instead of a GPS. Although we agree with Mathews that use of a paper map is not suspicious per se, and many people do not even own a GPS, in the circumstances presented here, Mathews' use of a map rather than a GPS was at least consistent with the officer's suspicion and his training regarding the behavior of persons transporting drugs.

While any one of these factors, considered in isolation, might not create reasonable suspicion, we consider them collectively. When so considered, they give rise to reasonable suspicion justifying the brief extension of the stop to allow for the employment of a drug dog.

Finally, Mathews argues that the district court inadequately considered other facts known to the officer that indicated Mathews was not a drug trafficker. These include Mathews' sobriety at the time of the stop, the normalcy of his vehicle, and the lack of marijuana odor coming from the car. We are not persuaded that the district court erred. We, like the district court, conclude that the facts discussed above created reasonable suspicion. The additional facts highlighted by Mathews were not of such character as to dispel that suspicion.

The evidence supports the district court's determination that the officer had reasonable suspicion that Mathews was engaged in criminal activity, which warranted further investigation. Therefore, Mathews has not shown that his Fourth Amendment rights were violated when the traffic stop was slightly extended to permit the use of a drug dog. Accordingly, the order denying Mathews' suppression motion is affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**