**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50764**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: March 14, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| EVELYN DOLORES FINK, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jason D. Scott, District Judge.

Judgment of conviction for possession of a controlled substance, vacated.

Erik R. Lehtinen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge Pro Tem

Evelyn Dolores Fink appeals from her judgment of conviction for possession of a controlled substance. We vacate Fink's judgment of conviction.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officers approached Fink after observing her and two other people standing on a rocky space under an overpass. The officers noted that the rocky space was set off the sidewalk and not a typically frequented area. Fink was in possession of a shopping cart holding her personal belongings. The officers detained her because they suspected that the shopping cart was stolen.[1]

---

[1]     While Fink was detained, the officers spoke with the other two people and made a consensual search of one of them for drugs but found nothing. The officers did not further detain either of the other two people, and they are not the subject of this appeal.

After Fink was detained, one of the officers inspected the shopping cart and noted that there was no store or brand name visible because it had been scratched off the handle. The officer believed he could make out a "W" and thought the shopping cart could have been the property of the WinCo grocery store. After asking for her name, the officer relayed it to dispatch and was told that Fink had previously been convicted of drug possession. The officer then asked to search Fink and she refused. The officer said that he needed to search Fink's jacket for drugs because it had been an issue in her past. Fink took off her two outermost layers of clothing and handed them to the officers, which they understood to be consent to perform the search. An officer found methamphetamine in the pocket of one of the jackets.

Fink was charged with felony possession of a controlled substance. I.C. § 37-2732. Fink filed a motion to suppress the evidence, arguing a lack of reasonable suspicion supporting her initial detention. The district court denied the motion. Pursuant to a plea agreement, Fink entered a conditional *Alford*[2] guilty plea to possession of a controlled substance, reserving her right to appeal the district court's denial of her motion to suppress. Fink appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

---

[2]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

### III.

### ANALYSIS

On appeal, Fink argues that her possession of a shopping cart in an area the officer described as atypical for shopping carts did not rise to the level of reasonable suspicion to detain Fink. The State responds that the district court did not err in denying Fink's motion to suppress because the officer had reasonable articulable suspicion to justify the detention. The State agrees with the district court's finding that reasonable suspicion was supported by Fink's possession of the shopping cart with the name scratched off on the cart handle in an area where shopping carts are not usually found.

Both the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution provide that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV; IDAHO CONST. art 1, § 17. A seizure for Fourth Amendment purposes may take the form of an arrest or an investigatory detention. *See State v. Pylican*, 167 Idaho 745, 750-51, 477 P.3d 180, 185-86 (2020). For an arrest to be considered lawful, it must be based on probable cause. *State v. Bishop*, 146 Idaho 804, 816, 203 P.3d 1203, 1215 (2009). However, limited investigatory detentions, based on less than probable cause, are permissible when justified by an officer's reasonable articulable suspicion that a person has committed, or is about to commit, a crime. *State v. Huntley*, 170 Idaho 521, 526, 513 P.3d 1141, 1146 (2022); *Bishop*, 146 Idaho at 811, 203 P.3d at 1210. Officers need not have reasonable suspicion of a particular crime, only that criminal activity may be afoot. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Whether officers had reasonable articulable suspicion to conduct an investigative detention depends on the totality of the circumstances known to an officer at the time of the stop. *State v. Danney*, 153 Idaho 405, 409-10, 283 P.3d 722, 726-27 (2012). Reasonable suspicion requires more than an inchoate and unparticularized suspicion or hunch. *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *Bishop*, 146 Idaho at 811, 203 P.3d at 1210. Instead, reasonable suspicion must be founded on specific articulable facts and the rational inferences that can be drawn from those facts. *State v. Bonner*, 167 Idaho 88, 94, 467 P.3d 452, 458 (2020). Law enforcement officers may take into account their experience and law enforcement training in drawing inferences from facts gathered. *Danney*, 153 Idaho at 410, 283 P.3d at 727.

At the hearing on the motion to suppress, the State questioned one of the officers and he articulated his purpose for stopping Fink as follows:

Q:    And what was the purpose for that stop?
A:    They [other officers] advised me that [Fink] had a grocery cart in her possession.
Q:    And did that give you some concern?
A:    That would be--it made me believe that could be stolen property, which would be a crime.  So it gave me just a reason to speak with her further.
Q:    Did you investigate the cart?
A:    I approached the cart first, yes.
Q:    And did you learn anything from looking at the cart that gave you some concern?
A:    I did.  The cart--most grocery carts have a push handle on them which will display the store name.  This one did, and it was scratched off so I couldn't see the name, which made me more suspicious that it's been stolen.
Q:    It's fair to say grocery carts are not something you see just routinely on the streets?
A:    That's correct.
Q:    People don't just have grocery carts generally, correct?
A:    Correct.

This case presents a narrow question:  whether possession of a shopping cart in a place where shopping carts are not usually found (i.e., away from a store with shopping carts) provides a reasonable suspicion to conduct an investigatory detention.  We hold that it does not.

The district court reasoned the presence of the shopping cart in an area where shopping carts would not usually be found, together with what was likely a store name scratched off on the handle of the cart, provided reasonable suspicion for the detention.  What the district court did not recognize is that the detention occurred before the officer saw the scratched off store name on the handle on the cart.  Whether officers had a reasonable articulable suspicion to conduct an investigative detention depends on the totality of the circumstances known to the officer at the time of the stop.  *Danney*, 153 Idaho at 410, 283 P.3d at 727.  The only information available to the officer when the initial investigatory detention occurred was the possession of the shopping cart in a place where shopping carts would not usually be found.  This led the officer to believe that the cart might have been stolen.

The district court looked to other states for guidance in making its decision.  The authorities referenced by the district court are not published opinions that this Court can rely on for its analysis but those cases generally support the principle that something more than mere

4

possession of a shopping cart is necessary to provide a reasonable suspicion of criminal activity.[3] Published authority includes *Mayhue v. Florida*, 659 So. 2d 417 (Fla. Dist. Ct. App. 1995) (finding the appellant was unlawfully detained where the officer approached the appellant pushing a shopping cart containing a large television in a high crime area because this did not rise to the level of reasonable suspicion); *New York v. Logan*, 663 N.Y.S.2d 406 (N.Y. App. Div. 1997) (holding there was reasonable suspicion because the officer observed the appellant pushing a grocery store cart in the street at 2 a.m. filled with boxes of cigarettes and broken glass).

Here, after Fink was detained, one of the officers discovered what he believed to have been a store name scratched off from the plastic handle of the shopping cart. We need not decide whether that additional fact would have provided a reasonable suspicion for the stop because it was only discovered after Fink was detained. Without additional facts supporting reasonable suspicion, our holding is limited to a determination that possession of a shopping cart in a place where shopping carts are not usually found does not support reasonable suspicion for a detention.

## IV.

## CONCLUSION

Because Fink's initial detention was not supported by a reasonable suspicion of criminal activity, Fink's motion to suppress should have been granted. Consequently, the district court

---

[3]     *See State v. Botch*, No. 1 CA-CR 19-0383, 2020 WL 5834845 (Ariz. Ct. App. Oct. 1, 2020) (holding that there was reasonable suspicion to detain the appellant because the officer observed the appellant at 1 a.m. obstructing a roadway, trespassing, unlawfully camping in an urban setting and unlawfully possessing several shopping carts); *People v. Brown*, No. A122198, 2009 WL 2244181 (Cal. Ct. App. July 28, 2009) (finding that detention was lawful because officers observed the appellant at 2:28 a.m. pulling a shopping cart with the name Safeway printed on it, the appellant refused to stop or take his hands out of his pockets when the officers asked, and the shopping cart was full of items that appeared similar to those taken from a recent burglary); *State v. Pellum*, No. 46229-6-1, 106 Wash. App. 1003, 2001 WL 434923 (Wash. Ct. App. Apr. 30, 2001) (finding that there was reasonable suspicion for officers to stop the appellant because he was pushing a shopping cart with a Safeway placard at 10 p.m. and, upon making contact with the appellant, asking if he had any weapons in his possession and discovered he was in possession of a stolen handgun without a concealed weapons permit). While each of the cases cited by the district court involved situations in which possession of shopping carts supported reasonable suspicion, the officers detaining the appellants in each case articulated additional facts supporting their reasonable suspicion beyond possession of a shopping cart alone.

erred in denying Fink's motion to suppress. Accordingly, Fink's judgment of conviction for possession of a controlled substance is vacated.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.