160 P.3d 1279

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Juliana Mildred SALOIS, Defendant–Respondent.**

No. 32822.

Court of Appeals of Idaho.

May 15, 2007.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for appellant. Rebekah A. Cudé argued.

Molly J. Huskey, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for respondent. Elizabeth A. Allred argued.

WALTERS, Judge Pro Tem.

Following a traffic stop and subsequent search of her vehicle and person, Juliana Mildred Salois was charged with possession of cocaine, possession of hydrocodone, and possession of drug paraphernalia. Salois moved to suppress the physical evidence and her statements made to the police during the stop. The district court granted the motion to suppress on alternative grounds, holding that Salois's vehicle was stopped without reasonable suspicion of criminal activity and that the stop was unconstitutionally prolonged. The district court also held that any statements made by Salois to the police would be suppressed because even though the record showed that Salois was advised of her *Miranda*[1] rights by the officers, the record failed to show that Salois either understood her rights or that she waived them. The State appeals. We affirm.

## I.

## BACKGROUND

In the daylight hours of June 23, 2005, while driving on U.S. Highway 95, Trooper Steven Smith of the Idaho State Police observed a vehicle coming toward him from the opposite direction. Smith noticed that the vehicle had no front license plate. When the vehicle passed, Smith observed that the vehicle also had no rear license plate. Smith turned around, followed the vehicle for about one mile and then activated his overhead lights at an area where it was safe to stop the vehicle. Salois was the driver of the vehicle. The stop was captured by the officer on videotape, with audio. After exiting his patrol car, Smith removed and reviewed a temporary registration document located in the rear window of Salois's vehicle. After further investigation, Smith discovered that the document had been issued for a different vehicle and that the expiration date had been altered, rendering the temporary registration for Salois's vehicle invalid. During the course of the detention, a drug-sniffing canine, brought by another officer, alerted on Salois's vehicle. The vehicle was searched and illegal drugs and drug paraphernalia were discovered in the vehicle.

Following the filing of charges, Salois moved to suppress the physical evidence and her statements made to the officers during the detention. Salois contended that at the time of the stop, her vehicle displayed a temporary registration in the rear window and that there was no evidence that the temporary registration permit was improperly placed, or that it was not visible to Trooper Smith when he followed Salois's vehicle. From this premise, Salois asserted that her vehicle was stopped without reasonable suspicion of criminal activity, and therefore the evidence obtained as a result of the stop should be suppressed. In response, the State asserted that Smith properly stopped the vehicle because it was being operated without license plates and that, according to Smith's anticipated testimony, "Trooper Smith did not notice the temporary permit in the back window until he made the stop of the vehicle."

At a hearing on the motion, the State offered Smith's testimony and the videotape of the stop. The district court thereafter granted the suppression motion, finding first that the State failed in its burden to show that the trooper had a reasonable suspicion

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

of criminal activity at the time he made the traffic stop. In the alternative, the district court also suppressed evidence on the further grounds that the detention was unconstitutionally prolonged awaiting the second officer who arrived with the drug-sniffing dog and that Salois did not understand the *Miranda* warnings she allegedly waived when making oral statements to the officers. The State pursues this appeal.

## II.

### STANDARDS OF REVIEW

■ On appeal from a trial court's order resolving a motion to suppress evidence, we defer to the trial court's findings of fact if they are supported by substantial evidence, but we freely review the trial court's determination as to whether constitutional standards have been satisfied in light of the facts found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Reyna,* 142 Idaho 624, 626, 130 P.3d 1162, 1164 (Ct.App.2006). In the absence of express findings of fact, Idaho's appellate courts will examine the "implicit" findings that support the trial court's ruling. *State v. Zavala,* 134 Idaho 532, 536, 5 P.3d 993, 997 (Ct.App.2000). Certain additional constitutional standards apply here:

> The Fourth Amendment to the United States Constitution guarantees every citizen the right to be free from unreasonable searches and seizures. Its purpose is "to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order to 'safeguard the privacy and security of individuals against arbitrary invasions.'" *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667–68 (1979) (quoting *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305, 311 (1978)). The stop of a vehicle constitutes a seizure of its occupants and is therefore subject to the Fourth Amendment restraints. *Id.* at 653, 99 S.Ct. at 1395–96,

59 L.Ed.2d at 667; *State v. Flowers,* 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct.App. 1998). Although a vehicle stop is limited in magnitude compared to other types of seizures, it is nonetheless a "constitutionally cognizable" intrusion and therefore may not be conducted "at the unbridled discretion of law enforcement officials." *Prouse,* 440 U.S. at 661, 99 S.Ct. at 1400, 59 L.Ed.2d at 672.

> The constitutionality of particular law enforcement conduct "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* at 654, 99 S.Ct. at 1396, 59 L.Ed.2d at 667–68. Under this standard, the Fourth Amendment is not violated when a police officer stops a vehicle for investigative purposes if the officer has a reasonable and objective basis for suspecting that the vehicle or an occupant is involved in criminal activity. *Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673–74; *State v. Van Dorne,* 139 Idaho 961, 963, 88 P.3d 780, 782 (Ct.App.2004); *State v. Sevy,* 129 Idaho 613, 615, 930 P.2d 1358, 1360 (Ct.App.1997). The information required for reasonable suspicion is less than is required for probable cause, but it must be more than mere speculation or a hunch on the part of the police officer. *Van Dorne,* 139 Idaho at 963, 88 P.3d at 782; *State v. Evans,* 134 Idaho 560, 563, 6 P.3d 416, 419 (Ct.App.2000). There must be "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889, 905–06 (1968). The reasonableness of the officer's suspicion is evaluated based upon the totality of the circumstances at the time of the seizure. *Evans,* 134 Idaho at 563, 6 P.3d at 419; *Flowers,* 131 Idaho at 208, 953 P.2d at 648.

*State v. Cerino,* 141 Idaho 736, 737–38, 117 P.3d 876, 877–78 (Ct.App.2005).

## III.

### DISCUSSION

■ The district court below concluded that reasonable suspicion to stop a vehicle for

failure to have license plates is absent if a temporary registration is properly displayed.[2] On appeal, the State takes issue with the district court's conclusion of law. The State maintains that a law enforcement officer may stop any vehicle being operated without license plates, even if the vehicle has a properly displayed temporary registration, to investigate whether the vehicle is being driven in contravention of traffic laws. We disagree. Idaho law requires that a motor vehicle be registered and display license plates when being operated on the highways of this state, subject to certain exceptions. Idaho Code § 49–456(1). One of those exceptions is the issuance of a temporary registration, variously referred to in the statute as a "permit" or "temporary permit," which is to be displayed on a vehicle in a "prominent place, where it may be readily legible."[3] I.C. § 49–432(3). This exception requires no independent investigation to determine its applicability.

■ Accordingly, we hold that the presence of a properly displayed temporary permit, subject to the discussion below, dispels any reasonable suspicion of a violation of I.C. § 49–456(1). To hold otherwise would allow law enforcement officers of this state unfettered discretion to stop each and every vehicle being operated with a temporary registration to "investigate" its validity. To the contrary, an officer must have a reasonable suspicion of criminal activity before a traffic stop is initiated, not after. A temporary permit displayed in compliance with I.C. § 49–432(3) carries with it a presumption of validity, not of invalidity. The mere existence of the properly placed temporary permit cannot serve as the basis for reasonable suspicion to allow an officer to stop a vehicle to inspect the permit unless the invalidity of

the permit, such as by improper alteration, is obvious and discernable by the officer prior to stopping the vehicle. The State's position would allow law enforcement officers to presume that temporary permits are invalid *per se*, justifying an officer to stop a vehicle in order to conduct further inspection concerning the legitimacy of the temporary permit. We reject that position.

■ The State also takes issue with a finding of fact made by the district court. While noting that the traffic stop here occurred during the daylight hours, the district court held:

> In this case, the police officer noted that Ms. Salois's vehicle was being operated without license plates. Also, in this case, there was a temporary (albeit invalid) permit in the window of the car being operated by Ms. Salois. As argued by Ms. Salois "there is no evidence this temporary was improperly placed, or was not visible to the officer prior to the stop." ... On this record, this statement is accurate. At no point did Officer Smith, the officer who stopped Salois, say he looked for a temporary and it was not visible. He did testify he observed the temporary as Ms. Salois was pulling the car to the shoulder. However, he never testified that he either looked for the temporary permit or was unable to see it prior to initiating the stop.

The State argues that "the only evidence before the district court was that Trooper Smith did not see the temporary (invalid) permit until Salois was already pulling over." From this premise, the State asserts that the district court's factual finding that "there is no evidence that this temporary was not visible to the officer prior to the stop" is

---

**2.** The district court relied in part on this Court's decision in *State v. Reed*, 129 Idaho 503, 927 P.2d 893 (Ct.App.1996). We held in *Reed* that an officer who stops a vehicle being operated without license plates has a reasonable suspicion to make a traffic-related stop as long as he has looked for and has not seen a temporary registration prior to initiating the stop. *Reed* is distinguishable from the instant case. There, Officer Rouse stopped a vehicle, at night, upon his observation that the vehicle had no license plates and, upon approaching the vehicle on foot, was able to see for the first time a valid temporary

registration. At the trial court level on a motion to suppress, "Reed acknowledged that the officer had a reasonable basis to signal Reed to stop since Rouse, while in his patrol car, was unable to see the temporary registration." *Reed*, 129 Idaho at 504, 927 P.2d at 894.

**3.** Whether the temporary registration was displayed in a "prominent place" was not at issue in this case; it was uncontroverted that the document was located in the rear window of Salois's vehicle.

erroneous and not supported by substantial evidence. Therefore, reasons the State, the motion to suppress was improperly granted. We conclude, however, that it is the State's position that is unsupported by the record.

At the suppression hearing the prosecutor never asked the trooper whether he looked for a temporary registration prior to initiating the stop and whether he saw it. Smith's exact testimony, as elicited by the State, was that "[a]s the vehicle was pulling to the shoulder, I did observe a piece of paper in the back window that could have possibly been a temporary." While this testimony could possibly lead to permissible inferences that the trooper looked for and did not see the temporary registration prior to initiating the stop, neither inference is compelled and the district court as the finder of fact did not make them.

Moreover, even if Smith had testified that he looked for the temporary permit and was unable to see it prior to initiating the stop, a trial court would not necessarily be bound to accept the trooper's testimony. At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *Reyna*, 142 Idaho at 626, 130 P.3d at 1164. There is other evidence in the record that implicitly supports the district court's findings that the temporary permit was visible to Officer Smith prior to the stop.

It will be recalled that the stop in this case was captured on videotape, with audio. The tape, as confirmed by the trooper's testimony, shows that the trooper followed Salois's vehicle for approximately one mile before initiating the stop by activating his overhead lights. The presence of the temporary permit is clearly visible on the videotape. Thus it appears that the district court implicitly rejected any inference that the trooper's testimony established that he looked for and/or did not see the temporary permit prior to initiating the stop. Finally, while again not expressly relied upon by the district court, the trooper made two audible statements to another officer during the stop, which was recorded on the videotape and strongly suggest that he saw the temporary registration

prior to initiating the stop. He said: "She goes by me; she's got this showing in the back window, so I pull her over" and "I get her going southbound, no plates on the car. She's got a temp hanging in the back window. Pull her over to check the temp."

On the record presented, the district court concluded that the State failed to satisfy its burden to establish reasonable suspicion for the traffic stop. The district court's legal conclusion was correct and its factual findings, express and implied, are supported by the record. We therefore uphold the district court's order granting Salois's motion to suppress the evidence obtained from a search of her automobile. Furthermore, because we conclude the first ground relied upon by the district court is dispositive to this appeal, we therefore do not address the remaining alternative bases for suppression.

IV.

**CONCLUSION**

Because the officer stopped Salois's vehicle without reasonable suspicion of criminal activity, the district court did not err in granting the motion for suppression of evidence. The district court's order granting the motion to suppress is affirmed.

Chief Judge PERRY and Judge GUTIERREZ Concur.

