**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42787**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Opinion No. 50** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: August 14, 2015** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **SCOTT ANDREW KINCH,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Christopher S. Nye, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Michael Jacques of Jacques Law Office, P.C., Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Chief Judge

Scott Andrew Kinch appeals from his judgment of conviction for possession of a controlled substance. Kinch asserts that the district court erred by denying his motion to suppress in which he argued that his traffic stop was not supported by reasonable suspicion. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

An officer stopped Kinch's vehicle after observing that the vehicle did not have license plates. Although a temporary registration permit was taped in the top left corner of the vehicle's back window, the officer could not read the permit because it was bent, somewhat crumpled, and obscured by a layer of condensation on the window in the area where it was taped. After approaching the vehicle, the officer still could not read the permit due to the condensation and

1

the bend in the paper. The officer informed Kinch that she stopped him because she was unable to read the temporary permit. After obtaining Kinch's license and the temporary registration permit, the officer asked Kinch if he had anything illegal in the vehicle. Kinch admitted that he had a pipe in his stocking cap on the passenger seat. The officer seized the pipe and cited Kinch for possession of drug paraphernalia. Subsequent testing on a white powder residue in the pipe confirmed the presence of methamphetamine. Kinch was then additionally charged with possession of a controlled substance and a sentencing enhancement for being a persistent violator of the law.

Kinch filed a motion to suppress, arguing that the officer's inability to read the temporary registration permit did not provide reasonable suspicion to perform the traffic stop. After a hearing at which only the officer testified, the district court denied Kinch's motion to suppress. It held that the officer had reasonable suspicion to stop Kinch because the temporary registration permit was not readily legible, as required by statute. Kinch filed a motion to reconsider based on new evidence--the video of the traffic stop. The district court denied Kinch's motion after a hearing, finding that the video supported its prior ruling. Pursuant to a plea agreement, Kinch pled guilty to possession of a controlled substance, I.C. § 37-2732(c)(1), and preserved his right to appeal the denial of the motion to suppress. In exchange, the state dismissed the paraphernalia charge and sentencing enhancement. The district court sentenced Kinch to a unified term of seven years, with a minimum period of confinement of one and one-half years. Kinch appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

2

## III.

## ANALYSIS

Kinch argues that the district court erred in denying his motion to suppress on two bases. First, he asserts that the district court's findings of fact were not supported by substantial and competent evidence based on Kinch's interpretation of the condition of the temporary registration permit as shown in the video of the traffic stop. Second, he contends that the district court erred in its interpretation of I.C. § 49-432(4), which governs the placement of temporary registration permits. Thus, he claims that his traffic stop was not supported by reasonable suspicion and, therefore, violated his rights under both the United States and Idaho Constitutions.[1]

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

---

[1] Although Kinch contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Kinch's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

## A.       Findings of Fact

When reviewing an order granting or denying a motion to suppress, we accept the trial court's factual findings unless the defendant shows that they are clearly erroneous. *State v. Munoz*, 149 Idaho 121, 128, 233 P.3d 52, 59 (2010); *State v. Kinser*, 141 Idaho 557, 560, 112 P.3d 845, 848 (Ct. App. 2005). Findings of fact are not clearly erroneous if they are supported by substantial and competent evidence. *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009); *State v. Davis*, 139 Idaho 731, 734, 85 P.3d 1130, 1133 (Ct. App. 2003). As noted above, we will not substitute our view for that of the trial court as to the credibility of the witnesses, the weight to be given to testimony, and the reasonable inferences to be drawn from the evidence. *Valdez-Molina*, 127 Idaho at 106, 897 P.2d at 997; *Schevers*, 132 Idaho at 789, 979 P.2d at 662.

Kinch contends that the district court erred in crediting the officer's testimony and finding that the temporary permit was "bent, crumpled, unreadable" and obscured by a "fogged over" window. Instead, Kinch argues that the video clearly shows a "flat, crisp, paper document that is not crumpled." The low-resolution video of the traffic stop fails to settle whether the temporary permit was displayed as Kinch now contends or as the officer testified and the district court found. However, the video tended to support the officer's testimony that she could not readily view the information on the temporary permit even after approaching the vehicle due to the condition of the permit and condensation on the window where the permit was placed. The video showed that the bottom right corner of the permit was bent.[2] Additionally, the officer stated to Kinch that the permit was unreadable and, after removing it from the window, specifically pointed out to Kinch and illuminated with her flashlight the opaque condensation blocking view of the permit. This, combined with the officer's consistent testimony at the suppression hearing, provided substantial and competent evidence supporting the district court's

---

[2]       Kinch contends that this bend did not obstruct the visibility of the information on the temporary permit; however, this claim is unsupported by either the video or any other evidence in the record. On the contrary, the legibility of the permit and how that was affected by the bend cannot be determined by the video alone, and the record does not include a copy of the temporary registration permit. As a result, the officer's testimony provides the most substantial and competent evidence of the temporary permit's condition.

conclusion that the temporary permit was not readily legible as displayed. Accordingly, we will not disturb these factual findings on appeal.

## B.  Statutory Interpretation

Kinch next contends that the district court erred in interpreting I.C. § 49-432(4)[3] and, specifically, the term "readily legible" as used in the statute. This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67.[4]

Kinch contends that his temporary permit was not required to be readily legible from the vantage point of a police vehicle or any vehicle on the road. Instead, he claims the permit needed only to be readily legible "upon a closer inspection." Kinch provides no support for this reading of the statute aside from a reference to I.C. § 49-443(1), which governs the size and nature of license plates so that they may be visible during daylight hours from a distance of 75 feet.[5] This difference in purpose, along with the nighttime circumstances present here, make this statute irrelevant to Kinch's case.

---

[3]     This statute requires that the temporary registration be posted "upon the windshield . . . or in another prominent place, where it may be readily legible."

[4]     Neither party argued, either below or on appeal, that the statute is ambiguous. Accordingly, we proceed with a review of the plain language of the statute.

[5]     Idaho Code Section 49-443(1) provides, in pertinent part:

> Every license plate shall have displayed upon it the registration number assigned to the vehicle and its owner and the name "Idaho" which may be abbreviated. The plates issued under the provisions of section 49-402(1), Idaho Code, and the required letters and numerals, including an identification of the county in which the motor vehicle to which the plates will be affixed is registered, shall be of sufficient size to be plainly readable from a distance of seventy-five

Similarly, in his reply brief, Kinch argues that I.C. § 49-429[6] addresses an analogous issue of the placement of applications for specialty license plates, so the lack of certain language in that statute--specifically, any requirement that the application be legible or even readable-- should impact the interpretation of I.C. § 49-432(4) at issue here. *See State v. Yager*, 139 Idaho 680, 690, 85 P.3d 656, 666 (2004) (holding that where a statute addressing one subject contains a certain provision, the omission of that provision from a similar statute addressing a related subject is significant to show that a different intent existed). Kinch's comparison provides no support for his claim that the permit must only be readily legible upon closer inspection. On the contrary, I.C. § 49-429 provides a blanket statement that mere display of an application constitutes compliance with the requirements of the chapter until the motorist receives the specialty plates. The statute makes no mention of whether the application or its information must be readily legible, readable, or even viewable.

Conversely, I.C. § 49-432(4) provides that the temporary permit must be displayed in a prominent place so as to be "readily legible." This shows an intent by the legislature that, unlike applications for specialty plates, temporary permits must be visible (indeed, readily legible) while displayed on a vehicle. Moreover, as noted by the state, the readily legible requirement for posting a temporary permit applies "at all times while the vehicle is being operated on the highways." *Id.* Kinch's argument that a temporary permit need only be readily legible upon closer inspection, such as when one is right next to the vehicle while it is stopped, ignores the

---

(75) feet during daylight, and each license plate and registration sticker shall be treated with a fully reflectorized material according to specifications prescribed by the board.

[6]     Idaho Code Section 49-429 provides:

When an owner chooses to display special license plates, upon payment of required fees the department or the assessor shall issue to the applicant a copy of the application. The copy must be displayed in a suitable place on the rear window of a motor vehicle, or if a motorcycle, displayed on the motorcycle. The copy shall constitute compliance with the provisions of this chapter until such time as the license plates are received from the department. The copy of the application shall not have any value as compliance with the provisions of this chapter from and after the receipt of the license plates from the department.

plain language of the statute requiring that the permit be readily legible while the vehicle is being driven. Thus, although the statute does not explicitly provide that the temporary permit must be readily legible from the vantage point of another vehicle on the road, the context of the statute and its plain language make that implication clear.

Kinch further contends that, if the legislature had intended for a temporary permit to be readily legible from the vantage point of another vehicle, it would have used the word "readable" instead; however, "legible" is a synonym for "readable." *See* WEBSTER'S NEW INTERNATIONAL DICTIONARY 1889 (3d ed. 1993) (defining readable as "that can be read with ease," with "legible" as a subdefinition); *id.* at 1291 (defining legible as "capable of being read or deciphered" and "distinct to the eye"); *see also Legible*, DICTIONARY.COM, http://dictionary.reference.com/browse/legible (last visited July 24, 2015) (defining legible as "capable of being read or deciphered, especially with ease, as writing or printing; easily readable"); *Readable*, DICTIONARY.COM, http://dictionary.reference.com/browse/readable (last visited July 24, 2015) (defining readable as "capable of being read; legible"). Moreover, the use of the adverb "readily" shows that the legislature intended for the information on temporary registration permits to not merely be visible, but easily readable--an addition only necessary if viewing the temporary registration permit from some distance away.[7] *See* WEBSTER'S NEW INTERNATIONAL DICTIONARY at 1889 (defining "readily" as "with a fair degree of ease," "without much difficulty," and "easily"). As a result, Kinch's attempt to distinguish these terms fails.

Kinch next argues that, under the interpretation of I.C. § 49-432(4) employed in *State v. Salois*, 144 Idaho 344, 160 P.3d 1279 (Ct. App. 2007), the officer's inability to read the properly displayed permit did not provide reasonable suspicion to perform the stop. In *Salois*, the defendant was stopped based solely on the display of a temporary registration permit. No evidence was presented indicating that the officer was unable to read the permit either from the vantage point of his vehicle or upon closer inspection. We rejected the state's argument that the

---

[7] The statute does not provide any specific distance from which the temporary permit must be readily legible. However, we need not resolve this issue, as Kinch does not challenge the distance from which the officer observed the temporary permit, and the officer testified that, even while right next to Kinch's vehicle, she was unable to read the contents of the temporary permit.

mere presence of a temporary permit provided reasonable suspicion to perform a traffic stop and held the following:

> [T]he presence of a properly displayed temporary permit, subject to the discussion below, dispels any reasonable suspicion of a violation of I.C. § 49-456(1). To hold otherwise would allow law enforcement officers of this state unfettered discretion to stop each and every vehicle being operated with a temporary registration to "investigate" its validity. To the contrary, an officer must have a reasonable suspicion of criminal activity before a traffic stop is initiated, not after. A temporary permit displayed in compliance with I.C. § 49-432([4]) carries with it a presumption of validity, not of invalidity. The mere existence of the properly placed temporary permit cannot serve as the basis for reasonable suspicion to allow an officer to stop a vehicle to inspect the permit unless the invalidity of the permit, such as by improper alteration, is obvious and discernable by the officer prior to stopping the vehicle. The State's position would allow law enforcement officers to presume that temporary permits are invalid *per se,* justifying an officer to stop a vehicle in order to conduct further inspection concerning the legitimacy of the temporary permit. We reject that position.

*Id.* at 348, 160 P.3d at 1283.

Kinch argues that this holding precludes a finding of reasonable suspicion due to the temporary permit not being readily legible. Our holding in *Salois* was dependent on the presence of a properly displayed temporary permit, meaning one that was displayed in compliance with I.C. § 49-432(4). *Salois*, 144 Idaho at 348, 160 P.3d at 1283. Based on the plain language of that statute, a temporary permit is properly displayed only when it is both posted upon the windshield of each vehicle or in another prominent place and readily legible in that posted location. *See* I.C. § 49-432(4). Thus, a temporary permit is not properly displayed if it is not readily legible. We need not determine whether it must be readily legible from the vantage point of another vehicle or upon closer inspection because it was not readily legible in either case here.[8] As a result, the presumption of validity discussed in *Salois* does not apply to a temporary permit that is not readily legible because such is not properly displayed as required by the statute.

We hold that an improperly displayed temporary permit, including one that is not readily legible, provides reasonable suspicion to perform a traffic stop. The inability to easily read the

---

[8] We note, however, that the requirement in *Salois* that the officer must have reasonable suspicion that the temporary permit violates the law before initiating the traffic stop strongly suggests that the permit must be readily legible from the officer's vehicle, at least at some distance, otherwise a stop could never be initiated.

key information of a temporary registration permit (such as its expiration date), whether upon closer inspection or from the vantage point of a nearby vehicle, raises a reasonable and articulable suspicion beyond mere intuition or speculation that the temporary permit may be expired or invalid. Thus, the officer here had reasonable suspicion to stop Kinch's vehicle, and the district court did not err in denying Kinch's motion to suppress on that basis.

## IV.

## CONCLUSION

Kinch has failed to show that the district court's findings of fact were not supported by substantial and competent evidence. Kinch has also failed to establish that the district court erred in interpreting I.C. § 49-432(4). Thus, the district court did not err in denying Kinch's motion to suppress. Accordingly, Kinch's judgment of conviction for possession of a controlled substance is affirmed.

Judge GUTIERREZ and Judge GRATTON, **CONCUR**.