**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49825**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: November 2, 2023** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| JARED WAYNE GARITONE, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge. Hon. Patrick McFadden and James Combo, Magistrates.

Decision of the district court, on intermediate appeal from the magistrate court, affirming judgment of conviction for driving under the influence, <u>affirmed</u>.

Redal & Redal; John E. Redal, Coeur d'Alene, for appellant.

Hon. Raúl R. Labrador, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Chief Judge

Jared Wayne Garitone appeals from the decision of the district court, on intermediate appeal from the magistrate court, affirming his judgment of conviction for driving under the influence (DUI). We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

While waiting at a stoplight, an officer observed Garitone driving with his "shoulder pulled up to his ear." The officer suspected Garitone was unlawfully talking on a cell phone while driving (despite not seeing the actual device) and stopped him for distracted driving, a violation of I.C.

1

§ 49-1401A(2). Subsequent investigation revealed evidence that Garitone was intoxicated, resulting in his arrest and prosecution for DUI.[1] Garitone filed a motion to suppress, arguing that the officer lacked reasonable suspicion to conduct a traffic stop. The magistrate court denied Garitone's motion to suppress, concluding the officer's observations at the stoplight gave rise to reasonable suspicion of distracted driving, even without having actually seen a cell phone in Garitone's possession. The magistrate court also rejected Garitone's alternative argument that, even if the officer had a reasonable suspicion Garitone was using a cell phone while driving, the circumstances indicated his use was lawful under the "hands-free" exception to the distracted driving statute.

After denial of his motion to suppress, Garitone entered a conditional guilty plea to DUI (second offense), retaining his right to appeal the denial of his motion to suppress. I.C. § 18-8004. Garitone then appealed to the district court, which affirmed.[2] Garitone again appeals.

---

[1] Neither Garitone's motion to suppress nor the evidence presented during the suppression hearing describe what occurred after initiation of the traffic stop. However, police reports included in the clerk's record on appeal describe the investigation leading to Garitone's arrest for DUI.

[2] In the alternative, the district court dismissed Garitone's appeal because the magistrate court did not enter a written order denying his motion to suppress and he did not seek permission for an interlocutory appeal from the denial of his suppression motion. The district court also noted that Garitone filed his notice of appeal more than forty-two days after entry of the order denying his motion to suppress. Garitone does not challenge these bases for the dismissal of his appeal by the district court. Generally, this Court must affirm a trial court's decision on such unchallenged grounds. *See Rich v. State*, 159 Idaho 553, 555, 364 P.3d 254, 256 (2015); *State v. Goodwin*, 131 Idaho 364, 366, 956 P.2d 1311, 1313 (Ct. App. 1998). However, the State concedes that both of the cited grounds for dismissing the appeal are erroneous because Garitone filed a timely notice of appeal following entry of his judgment of conviction for DUI pursuant to his conditional guilty plea. Although Garitone designated the denial of his motion to suppress as the judgment or order being appealed, the erroneous designation of this interlocutory order instead of the judgment of conviction is not jurisdictional. *See Kugler v. Nw. Aviation, Inc.*, 108 Idaho 884, 886, 702 P.2d 922, 924 (Ct. App. 1985). Nor does the State contend that it was misled or otherwise prejudiced by the error. Accordingly, because the State has conceded error in relation to the district court's alternative bases for dismissal and the applicable standard of review entails review of the magistrate court's findings and conclusions, we will address the merits of Garitone's reasonable suspicion arguments.

2

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, we review the magistrate court record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefore, and either affirm or reverse the district court.

## III.

## ANALYSIS

Garitone argues that affirmance of the denial of his motion to suppress was error because an officer stopped Garitone without reasonable suspicion that he was using a cell phone while driving. Garitone further argues that, even if the officer's suspicion of cell phone use was reasonable, it was not reasonable suspicion of criminal activity because the officer observed only conduct that would fall within an exception to the distracted driving statute that allows operation of a cell phone in "hands free" mode while driving. The State responds that the denial of Garitone's motion to suppress was not error and he has failed to show error in the district court's decision on intermediate appeal. Because the officer's observations of Garitone before the traffic stop support a reasonable suspicion that Garitone was unlawfully using a cell phone while driving, we affirm the district court's decision on intermediate appeal.

### A. Reasonable Suspicion

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures.[3] *Delaware v.*

---

[3] Although Garitone cites both the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution in his opening brief, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment in this case. Therefore, the Court will rely on judicial interpretation of the Fourth

*Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

Garitone was stopped for a suspected violation of I.C. § 49-1401A(2). Whether reasonable suspicion justified the stop requires the Court to interpret I.C. § 49-1401A(2) to determine what conduct it prohibits. The objective of statutory interpretation is to give effect to legislative intent. *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013). This process begins with consideration of the statutory text. *Id.* The statutory text should be considered as a whole with words given their plain, ordinary meanings. *Id.* Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). If the language is clear and unambiguous, there is no occasion for the Court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67.

Idaho Code Section 49-1401A(2) provides, in pertinent part, that "except as provided in this subsection, a person shall not operate a motor vehicle while using a mobile electronic device." Under I.C. § 49-1401A(1)(a), the term "mobile electronic device" includes "cellular telephones" along with other specified consumer electronics, but excludes certain two-way radios, "information or communication system[s] installed within a vehicle," emergency communication

---

Amendment in its analysis of Garitone's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

devices, and "prescribed medical device[s]." According to I.C. § 49-1401A(1)(b), a person operates a motor vehicle by "driv[ing] or assum[ing] physical control of a motor vehicle upon a public way, street, road, or highway, including while temporarily stationary because of traffic, a traffic control device, or other momentary delays." Vehicles that are "lawfully parked or . . . pulled to the side of or off the road at a location where it is legal to do so" and that remain stationary are expressly excluded from the statutory definition of "operate." *Id.* Despite defining what drivers cannot use and when they cannot use it, I.C. § 49-1401A does not define what it means to "use" a mobile electronic device. However, the common, ordinary understanding of "use" means "put into action or service," "avail oneself of," or "employ." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1378 (11th ed. 2003). Applying these definitions, I.C. § 49-1401A(2) unambiguously prohibits (with certain exceptions) a person from driving a motor vehicle while putting into service or otherwise employing a cell phone.

We next consider whether the officer who stopped Garitone had a reasonable suspicion that he was violating I.C. § 49-1401A(2) as we have interpreted its language. During the suppression hearing, the officer testified to observing Garitone make a left-hand turn "with his shoulder up to his ear." According to the officer, Garitone was driving a jeep with a detached roof and doors that "were just . . . metal bars so you'd be able to clearly see into the cab of the vehicle." Although the officer admitted on cross-examination that he did not "actually see a phone," he believed Garitone "was talking on his cell phone" based upon his posture. The magistrate court determined that the officer had "the training and experience to be able to make an observation like he did . . . and make a determination that [Garitone] was using a cell phone." Accordingly, the magistrate court reasoned that, "based upon those observations," the officer "had a right to stop [Garitone] and inquire and see" if he was violating the law. On intermediate appeal, the district court affirmed the magistrate court's decision denying Garitone's motion to suppress "in all respects."

According to Garitone, the officer's observations did not give rise to reasonable suspicion as his "testimony amounted to a hunch" that was "based on the fact that [Garitone] was holding his ear to his shoulder . . . without observing any actual talking, texting, or any other 'use.'" We disagree. Common sense dictates that people generally do not go about their daily lives with an ear pressed against their shoulder without reason. One common circumstance in which someone

5

would have this posture is when the person is holding a phone in the crook of the neck in order to free up use of their hands while using the phone. Thus, it would not be unreasonable for an officer to infer that someone holding an ear to his or her shoulder is likely using a phone cradled there; rather, that is a reasonable inference. Moreover, such an inference need not be grounded in specialized law enforcement training or experience to be material because officers may rely upon commonly held knowledge acquired in their everyday lives to draw factual inferences that give rise to reasonable suspicion. *Kansas v. Glover*, 589 U.S. ___, ___, 140 S. Ct. 1183, 1189 (2020).

That the officer did not observe a cell phone between Garitone's ear and shoulder as he drove by does not render the officer's inference that Garitone was using a cell phone unreasonable. That the officer's observations did not foreclose the possibility that Garitone was not cradling a cell phone between his ear and shoulder does not preclude a finding of reasonable suspicion. *See id.* (explaining that the "fact the registered owner of a vehicle is not always the driver of the vehicle does not negate" reasonable suspicion because the "reasonable suspicion inquiry 'falls considerably short' of 51% accuracy"). Similarly, the officer's failure to testify that he observed Garitone talking or texting does not negate the reasonableness of the officer's inference. If Garitone was cradling a cell phone between his ear and shoulder, it is unlikely he would do so without employing the device to talk with or listen to another person. This is a commonsense conclusion, based on reasonable inferences, that is permissible under the Fourth Amendment.

### B. "Hands-Free" Exception

Garitone also contends that, "even if it was reasonable for [the officer] to believe [Garitone] was using his phone while driving," it was unreasonable for the officer to believe that use was unlawful. Specifically, Garitone asserts that, under the facts known to the officer before the traffic stop, it was immediately apparent that an exception to the general prohibition of I.C. § 49-1401A(2) that permits drivers to use a cell phone in "hands-free" mode applied, negating the reasonableness of any suspicion that Garitone was engaged in unlawful conduct. We disagree.

In addition to generally prohibiting the use of mobile electronic devices while driving, I.C. § 49-1401A(2) enumerates various exceptions to that general prohibition. Relevant to this appeal, the statute provides, in pertinent part:

The provisions of this subsection shall not apply to:

6

(e) The use of a mobile electronic device in a voice-operated or hands-free mode if the operator of the motor vehicle does not use his hands to operate the device, except through one-touch activation or deactivation of a feature or function of the device.

The magistrate court rejected Garitone's argument that this provision dispelled any reasonable suspicion that his suspected cell phone use was unlawful, indicating that his argument was a "stretch beyond" what the legislature meant "by utilizing a phone hands-free."

As previously noted, the district court affirmed the magistrate court's denial of Garitone's motion to suppress in all respects. In support of this determination, the district court indicated during oral argument that the officer who stopped Garitone had reasonable suspicion of distracted driving upon seeing him driving with his ear pressed to his shoulder. Additionally, the district court reasoned that, under *State v. Farrell*, 165 Idaho 839, 453 P.3d 273 (Ct. App. 2019), the officer's reasonable suspicion calculus did not have to consider whether the conduct he observed fell within exceptions enumerated under I.C. § 49-1401A(2) "because *Farrell* tells [the officer] he doesn't have to get into those subsections." Alternatively, the district court reasoned that, "even were [the officer] to plow through those subsections," he still had a reasonable suspicion that Garitone was "using a mobile phone shoved in the crook of his neck, and it's reasonable to believe that that mobile phone got to the crook of [his] neck by the use of [his] hand by pressing one or more buttons and that it stayed there."

Garitone faults the district court's reliance on *Farrell*, asserting that case is distinguishable and the circumstances presented here are "akin to" *State v. Salois*, 144 Idaho 344, 160 P.3d 1279 (Ct. App. 2007). Both cases support the conclusion that the officer lawfully stopped Garitone.

In *Salois*, this Court recognized that an exception to a criminal statute bears upon an investigating officer's initial reasonable suspicion determination when the applicability of the exception is readily apparent. *See id.* at 348, 160 P.3d at 1283. An officer stopped Salois for driving a vehicle without front or rear license plates in violation of I.C. § 49-456(1).[4] As Salois

---

[4] The relevant version of the statute provided, in pertinent part:

It shall be unlawful for any person:
(1) To operate or for the owner to permit the operation upon a highway of any motor vehicle, trailer or semitrailer which is not registered and which does not have attached and displayed the license plates

was pulling over, the officer observed "a piece of paper in the back window that could have been a temporary [permit]." *Salois*, 144 Idaho at 349, 160 P.3d at 1284. Further investigation revealed that the paper was a temporary permit with an altered expiration date for a different vehicle. During the investigation of the temporary permit, another officer arrived and conducted a free-air dog sniff around Salois's vehicle. The search that ensued when the dog alerted yielded controlled substances and drug paraphernalia, resulting in Salois being charged with possession of cocaine, hydrocodone, and drug paraphernalia. Subsequently, Salois successfully moved to suppress her statements to police and the physical evidence obtained during the stop, arguing she was stopped without reasonable suspicion and officers unlawfully prolonged the stop.

On appeal, this Court affirmed the district court's order granting Salois's motion to suppress, holding that the presence of a properly displayed temporary permit dispels any reasonable suspicion of a violation of I.C. § 49-456. *Salois*, 144 Idaho at 348, 160 P.3d at 1283. In so holding, we rejected the State's argument that officers may stop any vehicle operating without license plates, even when the vehicle has a properly displayed temporary permit. We recognized that a temporary permit issued and displayed pursuant to I.C. § 49-432(3) constitutes an exception to the requirement of I.C. § 49-456 that vehicles be registered with properly displayed license plates. Giving temporary permits a presumption of validity, we reasoned that the mere presence of a temporary permit does not give rise to reasonable suspicion to stop a vehicle unless it is "obvious and discernable" the permit is invalid prior to the stop. *Salois*, 144 Idaho at 348, 160 P.3d at 1283.

In *Farrell*, this Court also addressed the reasonableness of a traffic stop arising from conduct falling within an exception to a traffic law. Farrell was a passenger in a vehicle stopped for a suspected window-tint violation. When testing revealed the rear window was tinted darker than allowed by law, one officer began completing a citation for the equipment violation while

---

assigned to it for the current registration year, subject to the exemptions allowed in sections 49-426, 49-431, 49-432 and 49-433, Idaho Code.

I.C. § 49-456(1) (2007). Although the statute has since undergone minor amendments for grammar and to update statutory cross-references, the statutory text of the current version of I.C. § 49-456(1) is virtually identical to that quoted above. *See* I.C. § 49-456(1) (2023).

8

another conducted a drug dog sniff. The drug dog alerted, resulting in searches of the vehicle and passengers that yielded controlled substances and drug paraphernalia. After being charged with possession of methamphetamine and filing an unsuccessful motion to suppress, Farrell entered a conditional guilty plea to an amended charge of trafficking in heroin.

On appeal, Farrell argued that the denial of his suppression motion was error because officers unlawfully prolonged the stop by failing to use the least intrusive means necessary to investigate the suspected equipment violation. Specifically, Farrell argued that officers could have quickly dispelled any reasonable suspicion that the window tint was unlawful by checking factory markings on the window that indicated the window tint was factory installed and, therefore, fell within an exception to the statutory window-tint restriction. According to Farrell, by failing to do so, the officers unlawfully extended the traffic stop to measure the window tint and issue a citation.

In rejecting Farrell's argument, this Court observed that "the fact that there is an exception in a statute making otherwise unlawful conduct acceptable does not itself dispel an officer's reasonable suspicion." *Farrell*, 165 Idaho at 843, 453 P.3d at 277. In this case, the district court apparently interpreted this statement as indicating that exceptions incorporated into criminal statutes do not factor into the reasonable suspicion analysis at all. *Farrell* should not be read that broadly. A discussion of the dearth of evidence in the record showing that the officer who stopped Farrell was aware of facts indicating that an exception to the window-tint statute applied precedes the statement relied upon by the district court. However, the statement is followed by an explanation of why the evidence Farrell submitted with his motion to suppress, consisting of an affidavit from the registered owner of the vehicle and "dealer documentation" indicating that the rear window-tint of the vehicle fell within the exception to the general window-tint restriction of I.C. § 49-944(1)(b), did not establish that he was unlawfully seized. We reasoned that Farrell's showing, made "after the fact," "only prove[d] that the driver [could not] be convicted of the traffic violation," not that Farrell was detained without reasonable suspicion. *Farrell*, 165 Idaho at 843, 453 P.3d at 277. Considered in this context, the language from *Farrell* relating to effect of statutory exceptions stands only for the proposition that the mere existence of an exception to a criminal statute does not affect the reasonableness of an officer's suspicion that a violation of the statute is afoot in the absence of evidence of facts indicating the exception applies. This interpretation of the language in *Farrell* is consistent with the holding of *Salois* outlined above.

9

For the holding in *Salois* to apply to Garitone, we must find the asserted statutory exception--the hands-free exception--to be an affirmative defense rather than an element of distracted driving under I.C. § 49-1401A(2). The general rule is that the State bears the burden of negating exceptions or provisos appearing in the portion of a statute defining a crime when the exception is incorporated with the language describing and defining the offense such that omission of the exception prevents the clear and accurate description of the elements of the offense. *State v. Segovia*, 93 Idaho 208, 210, 457 P.2d 905, 907 (1969). "However, if the exception is not so incorporated with the clause defining the offense as to become a material part of the definition of the offense, then it is a matter of defense and must be shown by the other party, though it be in the same section." *State v. Haley*, 129 Idaho 333, 336, 924 P.2d 234, 237 (Ct. App. 1996); *see also Cope v. State*, 89 Idaho 64, 69, 402 P.2d 970, 973 (1965). Thus, when omitting the exception from a statute is possible "without doing violence to the definition of the offense," the exception is not an element absent legislative intent to the contrary. *United States v. McArthur*, 108 F.3d 1350, 1353 (11th Cir. 1997).

We hold that the hands-free exception established under I.C. § 49-1401A(2)(e) is an affirmative defense because omission of the exception is possible without altering the definition of distracted driving. The first sentence of I.C. § 49-1401A(2) defines the offense of distracted driving and states, in pertinent part: "Except as provided in this subsection, a person shall not operate a motor vehicle while using a mobile electronic device." The subsection then lists seven separate classes of conduct excepted from the general prohibition against distracted driving, including the hands-free exception. However, eliminating the "except as provided in this subsection" language does not alter the general definition of distracted driving. Moreover, if the "except as provided" language were deemed a material part of the offense of distracted driving, all seven potential exceptions listed under I.C. § 49-1401A(2) would become elements of the offense. If the legislature intended such a result, it is not discernable from the statutory text. Because the hands-free exception established under I.C. § 49-1401A(2)(e) is an affirmative defense, we must address whether it was immediately apparent under the circumstances prior to the stop that the exception applied.

Garitone asserts that, "even if [he] was on his phone, it wasn't in his hands, so the exception clearly applied." We disagree. Despite not observing a cell phone in Garitone's hands, it was

10

reasonable under the totality of the circumstances for the officer who stopped Garitone to be suspicious he had unlawfully used the phone with at least one hand while driving. According to a plain reading of the statutory text of I.C. § 49-1401A(2)(e), a driver may use a cell phone while driving if: (1) the phone is in a voice operated or hands-free mode; and (2) the driver does not use either hand to operate the phone, except to activate or deactivate a feature or function of the phone with a touch. Contrary to Garitone's contentions, the officer's suspicion that Garitone was driving with a cell phone between his ear and shoulder did not make it immediately apparent that either of the above described elements was satisfied. A phone positioned between an ear and shoulder does not make it immediately apparent that the phone is in a voice operated or hands-free mode. A manually dialed phone can be placed into such a position just as easily as one in voice operated or hands-free mode. Moreover, it was not unreasonable for the officer who stopped Garitone to infer that he used his hands to operate the phone in excess of that allowed by the hands-free exception. Although it is possible that Garitone had the phone "velcro'ed to his shoulder" as he asserted in oral argument during the intermediate appeal, common sense suggests that he likely activated the phone and then moved it to his shoulder. Such conduct would exceed the one touch activation or deactivation allowed under I.C. § 49-1401A(2)(e). Accordingly, because its applicability to Garitone was not immediately apparent, the hands-free exception did not dispel the officer's reasonable suspicion that Garitone violated I.C. § 49-1401A(2). Garitone has failed to show the district court erred in affirming the magistrate court's denial of his motion to suppress.

## IV.

## CONCLUSION

The officer who stopped Garitone had a reasonable suspicion that he was unlawfully using a cell phone while driving in violation of I.C. § 49-1401A(2). Garitone has failed to show error in the denial of his motion to suppress. Accordingly, the district court's decision, on intermediate appeal from the magistrate court, affirming Garitone's judgment of conviction for driving under the influence is affirmed.

Judge GRATTON and Judge HUSKEY, **CONCUR**.

11